Joanna Citron Day
District of Columbia Bar No. 477833
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Phone: (202) 514-3394
Fax: (202) 514-0097
Email: joanna.day@usdoj.gov
*Attorney for Plaintiff, United States of America*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>POTLATCH CORPORATION and POTLATCH LAND AND LUMBER, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by the authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA") and the Secretary of the United States Department of Transportation ("DOT"), files this Complaint and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action brought under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a).

2.      The United States seeks recovery from Potlatch Corporation and Potlatch Land and Lumber, LLC (collectively, "Defendants") of response costs incurred and to be incurred by

the United States in connection with the release or threatened release of hazardous substances at or from the Avery Landing Site located in Shoshone County, Idaho ("Site").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action, and the Defendants, pursuant to 28 U.S.C. §§ 1331 and 1345, and Sections 107 and 113(b) of CERCLA, 42 U.S.C §§ 9607 and 9613(b).

4.      Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and the release or threatened release of hazardous substances occurred, within this judicial district.

## DEFENDANTS

5.      Potlatch Corporation ("Potlatch") is a real estate investment trust, incorporated in Delaware and doing business in Idaho.

6.      Through a subsidiary, Potlatch Forest Products Corporation ("Potlatch Forest Products"), Potlatch operates wood and paper product manufacturing facilities in several states.

7.      Potlatch Land and Lumber, LLC ("Potlatch Land & Lumber") is a wholly owned subsidiary of Potlatch, incorporated in Delaware and doing business in Idaho.

8.      Potlatch owned an approximately five-acre portion of the Site from 1980 to 2005, and conducted operations that impacted the entire Site from 1994 to 2005.

9.      In 2005, Potlatch conveyed its interested in the five-acre parcel to Potlatch Forest Products Corporation ("PFPC").

10.      Potlatch Land & Lumber purchased the five-acre parcel from PFPC in 2008 and is the current owner.

## STATUTORY FRAMEWORK

11.     Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides, in pertinent

part, that "[w]henever . . . any hazardous substance is released or there is a substantial threat of

such a release into the environment . . . the President is authorized to act, consistent with the

national contingency plan, to remove or arrange for the removal of, and provide for remedial

action relating to such hazardous substance . . . ."

12.     By Executive Order 12,580 of January 23, 1987, the President's functions under

Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), have been delegated to the Administrator of

EPA, who has re-delegated those functions in instances such as this to the Regional

Administrators of EPA, and to the Secretary of DOT where the release is on or the sole source of

the release is from any facility under the jurisdiction, custody, or control of DOT. In turn, DOT

re-delegated those functions in this instance by Interagency Agreement to EPA, and the EPA

Region 10 Regional Administrator re-delegated these functions to the Manager of the Emergency

Management Program.

13.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part, that:

(1) the owner and operator of a vessel or a facility, [and]

(2) any person who at the time of disposal of any hazardous substance
owned or operated any facility at which such hazardous substances were
disposed of . . . shall be liable for --

(A) all costs of removal or remedial action incurred by the United
States Government . . . not inconsistent with the national
contingency plan . . . .

14.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), also provides that the United

States is entitled to interest on recoverable amounts from "the later of (i) the date payment of a

specified amount is demanded in writing, or (ii) the date of the expenditure concerned."

3

15.     Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), defines "hazardous substance" by reference to certain substances, elements, compounds, mixtures, solutions, hazardous wastes, and pollutants listed, designated, or regulated under various other environmental statutes and by EPA pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602, though "[t]he term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under" those other statutes.

## FACTUAL BACKGROUND

16.     The Site is approximately ten acres in size and is located along the St. Joe River about one mile west of the town of Avery in northern Idaho.  See Exhibit A.

17.     The Chicago, Milwaukee, St. Paul, and Pacific Railroad ("CMSP") owned the entire Site from 1907 to 1980 and conducted railroad operations there from 1907 to 1977, which included train refueling, switching, and minor maintenance.

18.     In 1977, CMSP initiated a bankruptcy reorganization proceeding, which lasted until 1985 when CMC Heartland Partners ("CMC") emerged as the successor to CMSP.

19.     In 1986, the United States condemned land in fee along the railroad line at the Site for use in re-routing the Forest Highway 50 between St. Maries, Idaho and Avery.

20.     In 2006, CMC initiated its own bankruptcy reorganization proceeding.

21.     From 1980 to 2005, Potlatch owned and operated the approximately five-acre western portion of the Site.

22.     From 1994 to 2005, Potlatch conducted operations that impacted the entire Site.

23.     From 2005 to 2008, Potlatch Forest Products owned the approximately five-acre western portion of the Site formerly owned by Potlatch.

4

24.     From 2008 to the present, Potlatch Land & Lumber has been the owner and operator of the approximately five-acre western portion of the Site formerly owned by Potlatch and Potlatch Forest Products.

25.     Investigations by the Idaho Department of Health and Welfare ("IDHW") in the late 1980s and early 1990s revealed the presence of material at times referred to as "oil" or "petroleum product" at a thickness of four feet or more on top of the groundwater table (also known as light non-aqueous phase liquid ("LNAPL") or "free product") underlying the Site.

26.     In or around 1989, Potlatch retained a consultant to conduct an environmental assessment at the Site, which revealed the presence of arsenic, barium, chromium, lead, and polychlorinated biphenyls ("PCBs") in groundwater samples.

27.     In 1992, EPA conducted an inspection at the Site, which revealed the presence of volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), metals, and PCBs in samples taken from groundwater, sediment, subsurface soil, and surface soil.

28.     During a 2007 removal assessment, EPA obtained samples of soil, groundwater, surface water, and LNAPL from the Site, and again there was evidence of the presence of VOCs, SVOCs, metals, PCBs, and now polycyclic aromatic hydrocarbons ("PAHs") in each medium.

29.     In July 2011, EPA selected a removal action for the Site as set forth in an action memorandum. The selected removal action consisted of the excavation of contaminated soil and disposal of this soil at an appropriate off-Site landfill. The action also included extraction and treatment of contaminated groundwater.

30.     EPA, Potlatch, Potlatch Forest Products, and Potlatch Land & Lumber conducted the removal action in 2012 and 2013.

31.     In 2011, Potlatch and Potlatch Forest Products made response cost payments to EPA, totaling $584,669.95.

32.     In 2012, Potlatch, Potlatch Forest Products, and Potlatch Land & Lumber made a response cost payment to EPA in the amount of $1,750,000.

33.     On April 25, 2012, EPA and the Federal Highway Administration ("FHWA"), a division of DOT, entered into an Interagency Agreement pursuant to the Economy Act, 31 U.S.C. § 1535. Under the Interagency Agreement and its subsequent amendments, EPA agreed to perform a removal action on behalf of FHWA on the federal land at the Site, for which FHWA agreed to reimburse EPA up to $4.1 million. FHWA has paid $4,045,077.54 to EPA under the Interagency Agreement. DOT, on behalf of FHWA, seeks reimbursement from the Defendants of the amount paid to EPA under the Interagency Agreement.

34.     Separate and apart from funds paid to EPA under the Interagency Agreement, DOT has incurred at least $394,047.29 in direct response costs related to the Site.

35.     As of April 30, 2017, the United States has total unreimbursed response costs associated with the Site in the amount of at least $13,429,449.19.

36.     On September 25, 2015, the United States made a written demand to Defendants for its unreimbursed response costs incurred at the Site. Since that date, neither Defendant has reimbursed the United States for any portion of these unreimbursed past response costs.

## GENERAL ALLEGATIONS

37.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

38.     Potlatch and Potlatch Land & Lumber are each a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6

39.     Metals (including arsenic, chromium, cobalt, copper, lead, manganese, mercury, nickel, silver, and sodium), PCBs, PAHs, VOCs, and SVOCs located at the Site are "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

40.     There has been a "release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of such hazardous substances into the environment at and from the Site.

41.     On information and belief, subject to a reasonable opportunity for further investigation and discovery, the petroleum found at the Site was used or waste oil contaminated by hazardous substances and thus does not fall within the petroleum exclusion of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

42.     The contaminated petroleum at the Site included LNAPL and dense non-aqueous phase liquid ("DNAPL").

43.     Potlatch Land & Lumber is the current "owner and operator" of an approximately five-acre portion of the Site within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

44.     Potlatch "owned or operated" an approximately five-acre portion of the Site from 1980 to 2005, during which time there was a disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

45.     During the time that Potlatch owned and operated the Site, Potlatch demolished above and below ground structures, graded, and used the property for various purposes, including, but not necessarily limited to, log and materials storage, parking, a rail line, and housing for employees and others.

46.     By demolishing above and below ground structures and grading the property during its ownership, Potlatch caused contamination to be spread throughout the Site.

47.    In the late 1980s through early 1990s, the Idaho Department of Health and Welfare ("IDHW") and EPA sampled the groundwater and soils at the Site.  Their investigations revealed the presence of LNAPL and hazardous substances, including volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), metals, and polychlorinated biphenyls ("PCBs").  Subsequent investigations by EPA also showed the presence of DNAPL at the Site.

48.    In 1994, pursuant to a Consent Order with IDHW, Potlatch installed and operated a "free phase petroleum product recovery system" ("recovery system") to intercept and capture LNAPL floating on groundwater prior to the discharge of this LNAPL to the St. Joe River. The recovery system consisted of four subsurface extraction trenches inserted adjacent to the St. Joe River, pumps installed within these trenches to extract LNAPL and groundwater, a tank to be used for storage of the extracted LNAPL, and an infiltration trench constructed on the north side of Highway 50, the up-gradient federal property, to be used for reinjection of the extracted groundwater.

49.    Pursuant to the 1994 IDHW Consent Order, the recovery system was supposed to separate and remove LNAPL from extracted groundwater prior to reinjection of the groundwater to the infiltration trench.  The recovery system did not include the filtering or treatment of groundwater for the removal of contamination prior to reinjection of the extracted groundwater on federal property.

50.    Potlatch operated the recovery system in a manner that caused and exacerbated contamination at the Site by:  failing to employ any form of treatment or filtration to remove hazardous substances associated with the extracted groundwater prior to the release of these materials onto federal property; failing to operate the groundwater pumps in a manner which

prevented LNAPL and DNAPL, that was contaminated by hazardous substances, from being extracted along with contaminated groundwater and released onto federal property; and flushing reinjected groundwater onto federal property, which thereby forced the migration of hazardous substances to soil and groundwater throughout the Site.

51.     Thus, through improper design and operation of the recovery system, Potlatch re-injected a mixture of used or waste oil and hazardous substances into the soil on the federal land at the Site from 1994 to 2000, which contamination then by force and gravity percolated through subsurface soil into the groundwater, and from there was pushed downgradient into the groundwater and soil throughout the Site, including portions of the Site which were previously uncontaminated.

52.     In 1999, Potlatch reported that extracted free product had been injected through use of the recovery system into the infiltration trench on the federal property at the Site.

53.     The 1999 report depicted a violation of the IDHW Consent Order, which stated: "Free product should not be pumped into the infiltration trench."

54.     The material that Potlatch injected into the infiltration trench in 1999 was used or waste oil contaminated by hazardous substances.

55.     Following the 1999 discovery of oil in the re-injection trench on federal property, Potlatch did not determine the extent of this contamination, did not notify FHWA or IDHW of this discovery, and did not undertake cleanup of either the contaminated oil or contaminant-impacted soil.

56.     In 2000, IDHW modified its 1994 order to require Potlatch to install a restraining barrier to prevent flow of free product to the St. Joe River.

57.     The restraining barrier did not stop the spread of contamination. Similar to the recovery system, groundwater and soil contamination actually spread further as a result of the barrier, and releases of hazardous substances continued to migrate throughout the Site until EPA initiated the CERCLA removal action in 2012.

58.     As a result, Potlatch is a person who owned and operated the Site at the time of disposal of hazardous substances within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

59.     The disposal and release or threatened release of hazardous substances at the Site has caused the United States to incur "response" costs, including enforcement and other removal costs, within the meaning of Sections 101(23), 101(25), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(23), (25), and 9607(a).

60.     Defendants have not fully reimbursed the United States for the response costs associated with the Site.

61.     The United States' response costs have been incurred not inconsistent with the National Contingency Plan, 40 C.F.R. pt. 300.

## CLAIM FOR RELIEF
**(Liability for Response Costs under CERCLA Section 107, 42 U.S.C. § 9607)**

62.     The allegations of the foregoing paragraphs are re-alleged and incorporated herein by reference.

63.     Pursuant to Sections 107(a)(1) and (2) of CERCLA, 42 U.S.C. §§ 9607(a)(1) and (2), Potlatch Land & Lumber, as the owner and operator of a facility from which there was a release or threatened release of hazardous substances, and Potlatch, as a person who owned or operated a facility at the time of the disposal of hazardous substances, are jointly and severally

liable to the United States for all response costs incurred or to be incurred by the United States in connection with the Site, plus interest accruing on those costs from September 25, 2015.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1.    Enter a judgment in favor of the United States against Potlatch and Potlatch Land & Lumber, jointly and severally, for all costs incurred by the United States in connection with the Site, plus interest on those costs accruing from September 25, 2015;

2.    Enter a judgment in favor of the United States against Potlatch and Potlatch Land & Lumber for all costs of this action, including attorneys' fees; and

3.    Grant such other and further relief as this Court deems appropriate.


Respectfully submitted,


JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


JOANNA CITRON DAY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611

BART M. DAVIS
United States Attorney
District of Idaho

CHRISTINE G. ENGLAND
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
BOISE, ID 83712-7788
TELEPHONE:  (208) 334-1211
FACSIMILE:   (208) 334-1414
Email: Christine.England@usdoj.gov

# EXHIBIT A - Key Avery Landing Site Features



### Legend

FPRS Extraction Trenches (installed 1994)

FPRS Infiltration Trench (installed 1994)

FPRS Carrier Pipe Trench (installed 1994)

Containment Wall (installed 2000)

Former 500,000-gallon AST

E&E 2012 RA Excavation Area

Geoengineers 2013 RA Excavation Area

FHWA Property

Projected Coordinate System:
NAD83 U.S. Feet (FIPS 1103)
Idaho State Plane West

**HGL**
HydroGeoLogic, Inc.

**Key Site Features**

AVERY LANDING

DATE: 2/1/0917
REV: 9

ANALYST: JWOOMES

APPROVED:

FILE: C:\Users\jwoomes\Desktop\Avery\GISMaps\KeySiteFeatures.mxd

I HEREBY CERTIFY that on the 12th day of February, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kevin S. Beaton, Attorney for Potlatch Corporation and Potlatch Land & Lumber LLC
kevin.beaton@stoel.com

JOANNA CITRON DAY
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611